Filed 10/21/21  P. v. Bridges CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B309404 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A649931) |
| v. | |
| TOMMY BRIDGES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Lonergan, Jr., Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1990, Tommy Bridges was convicted of, among other offenses, first degree murder (Pen. Code,[1] §§ 187, subd. (a), 189) with true findings on a lying-in-wait special circumstance allegation (§ 190.2, subd. (15)) and a personal-use-of-a-firearm enhancement allegation (§ 12022.5, subd. (a)). In October 2020, Bridges filed a petition for resentencing pursuant to section 1170.95. The superior court, without first appointing counsel or allowing an opportunity for briefing, summarily denied the petition. Because the record of conviction establishes that Bridges was ineligible for relief under section 1170.95 as a matter of law, any error committed by the superior court in denying the petition was harmless. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### I. Bridges's Trial for Murder and Attempted Murder

#### A. *The Prosecution's Case in Chief*

During the evening of September 17, 1988, Marvin Christy (Christy), the murder victim in this case, was standing at the corner of 90th Street and Avalon Boulevard in the City of Los Angeles with David Conley (Conley) and John Dailey (Dailey), the attempted murder victims, and with Ronyell Smith (Smith).

---

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

[2] We derive the factual and procedural background in part from this court's prior opinion affirming Bridges's judgment of conviction with a modification in sentencing. (*People v. Bridges* (Oct. 12, 1993, B057697) [nonpub. opn.].) On this court's own motion, we take judicial notice of our prior opinion. (Evid. Code, §§ 452, 459, subd. (a).)

Conley and Christy were members of the Grape Street Crips gang; Smith was a member of the "Rolling 30's," or Harlem Crips. Across the street, Howard Brown (Brown), a Rolling 30, was standing in front of his mother's house.

Between 9:00 and 9:30 p.m., a burgundy van emerged from an alley, paused briefly near where the victims and Smith were standing, made a left turn and disappeared heading eastward on 90th Street. Bridges, a member of the 89 Family Blood gang, was driving. Upon seeing the van, Conley suggested that the group leave. Smith did leave and walked across the street to join Brown. Smith left because, earlier that day, Bridges had approached him and said Smith was "good as a dead man" if he was "from Avalon" and was on the street that night. Brown had also been approached by Bridges earlier in the day and told "Bet' not be any Crips on the street."

Between five and 10 minutes after the van left, Bridges and two other men stepped from an alley between duplexes on Avalon, positioned themselves next to a group of automobiles, and after approximately two minutes, began shooting at Christy, Conley and Dailey. Bridges fired an Uzi; the other two men fired shotguns.

The victims had their backs to the attackers when the shooting began. Christy was shot in the head and immediately fell to the ground. As he lay on the ground calling out, "Oh lord, help me!" Bridges approached to within three or four feet and shot him several more times.

Conley and Dailey ran. Dailey was hit by gunfire. Conley escaped around the corner of Avalon and 91st Street and from there fired back at the attackers with a .25 caliber automatic handgun. Conley was unable to see the attackers from where he

was firing, but he fired in the direction where he heard footsteps, hoping his shooting would persuade the attackers to stop firing at the wounded Christy.

Christy died of his wounds. James Ribe, a medical examiner in the Los Angeles County Coroner's office, testified that Christy sustained two fatal gunshots wounds and 16 additional gunshot wounds which were not in themselves fatal.

### B.    *The Defense Case*

Appellant's mother testified that her husband, an independent contractor for the United States Post Office, was making a run to the Mojave Desert in the burgundy van on the night of September 17, 1988, and was just leaving the Bridges home on 90th Street at approximately 9:30 p.m. She testified that her husband resembled Bridges in appearance. Delfina Urbina, a resident of an apartment adjacent to the shooting scene, testified there were no outside lights at her apartment building on the night of the shootings. Andre Wilkins, who owned a business at the corner of 90th and Avalon, testified that on the night of the shootings, he closed his business at 7:30 p.m. and turned off all the lights.

## II.    Bridges's Verdict, Sentence, and Appeal

The jury convicted Bridges of one count of first degree murder (§§ 187, subd. (a), 189) and found true the special circumstance allegation that the murder was committed while lying in wait (§ 190.2, subd. (15)) and the enhancement allegation that Bridges personally used a firearm during the commission of the offense (§ 12022.5, subd. (a)). The jury also convicted Bridges of two counts of attempted murder (§§ 664, 187) with a firearm enhancement (§ 12022.5, subd. (a)) as to

4

each count and a great bodily injury enhancement (§ 12022.7) as to one of the counts.  Bridges was sentenced to two consecutive terms of life without the possibility of parole, plus two additional years.

On appeal from his judgment of conviction, Bridges challenged the sufficiency of the evidence supporting the lying-in-wait theory of first degree murder and the lying-in-wait special circumstance.  In affirming the judgment, we concluded the evidence was sufficient to support Bridges's first degree murder conviction, stating, "Evidence that Bridges and his companions emerged from a darkened alley while the victims' backs were turned to them, positioned themselves next to a group of parked cars, and fired without warning was evidence from which a reasonable trier of fact could conclude the attackers 'lay in wait' for the victims within the meaning of section 189."  We further concluded that, even if the evidence had not supported a lying-in-wait theory of murder, a "finding of premeditation and deliberation was abundantly supported by evidence that Bridges told witnesses during the afternoon preceding the shootings that if any Crips were on the street that night, they were 'good as dead'; evidence that Bridges and his companions emerged from an alley carrying firearms, took aim and fired; and most emphatically, evidence that Bridges stood three to four feet from Christy and continued to fire at him as he lay on the ground calling for help."

We also concluded the evidence was sufficient to support the lying-in-wait special circumstance.  As we explained, "the jury could reasonably find physical concealment and a substantial period of watching and waiting for an opportune time to act from the circumstances that Bridges and his companions

5

first drove past the victims and paused, then appeared to leave the vicinity, then emerged five to [10] minutes later from a darkened alley while the victims' backs were turned, positioned themselves next to a group of parked cars, and fired without warning from that protected location."

## III. Bridges's Petition for Resentencing

On October 26, 2020, Bridges, representing himself, filed a petition for resentencing under section 1170.95. Checking boxes on the printed form petition, Bridges declared under penalty of perjury that he had been convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and that he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189. In his petition, Bridges also requested the appointment of counsel during the resentencing process.

On November 4, 2020, the superior court summarily denied the petition without appointing counsel for Bridges or inviting briefing by the parties. In its minute order, the court concluded that Bridges was not entitled to relief as a matter of law because he was "the actual killer." The court noted that Bridges "shot and killed" the victim using an Uzi, and that as the victim "called out 'oh lord, help me,' [Bridges] walked up to him within three to four feet and shot him several more times." The court also concluded that Bridges was not entitled to relief because the prosecution "did not proceed under a theory of felony murder or murder under the natural and probable consequences theory," but rather "argued that the murder was deliberate, willful[,] and premeditated."

Bridges timely appealed.

# DISCUSSION

## I. Overview of Section 1170.95

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended murder liability under the felony murder rule and natural and probable consequences doctrine. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) It amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration or attempted perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor in the murder; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (See *Gentile*, *supra*, at p. 842.) It amended the natural and probable consequences doctrine by adding section 188, subdivision (a)(3), which states that malice shall not be imputed to a person based solely on his or her participation in a crime. (*Id.* at p. 843.)

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-invalid felony murder or natural and probable consequences theory may petition the superior court to vacate the murder conviction and resentence the petitioner on any remaining counts. (See *Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Gentile*, *supra*, 10 Cal.5th at p. 843.) A petitioner is eligible for relief if he or she: (1) was charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) was convicted of first or second degree

murder; and (3) could no longer be convicted of first or second degree murder due to the changes to sections 188 and 189 effectuated by Senate Bill 1437.  (§ 1170.95, subd. (a).)

If the petition contains all the required information, including a declaration by the petitioner that he was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c) requires the superior court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he is entitled to relief.  (See *Lewis*, *supra*, 11 Cal.5th at pp. 959–960.)

In determining whether the petitioner has made the requisite prima facie showing that he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Appellate opinions "are generally considered to be part of the record of conviction" that the court may review in evaluating whether the petitioner has established a prima facie case.  (*Id.* at p. 972.)  The "prima facie inquiry under [section 1170.95,] subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' [Citations.] . . . [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the

8

court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.)

If a petitioner makes a prima facie showing of entitlement to relief, the superior court must issue an order to show cause (§ 1170.95, subd. (c)), and hold a hearing to determine whether to vacate the murder conviction and resentence the petitioner (§ 1170.95, subd. (d)(1)).  At that hearing, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for relief (§ 1170.95, subd. (d)(3))—that is, the People must prove beyond a reasonable doubt that the petitioner is guilty under a theory that remains valid after Senate Bill 1437's enactment.  (See *People v. Clements* (2021) 60 Cal.App.5th 597, 615, review granted Apr. 28, 2021, S267624; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230, review granted Mar. 10, 2021, S266652; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309 [holding substantial evidence standard applies at a § 1170.95, subd. (d)(3) hearing].)  Both the prosecution and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (§ 1170.95, subd. (d)(3).)  If the prosecution fails to sustain its burden of proof, the court must vacate the murder conviction and any allegations and enhancements attached to it, and resentence the petitioner on the remaining counts.  (§ 1170.95, subd. (d)(3).)

## II.    The Error in Denying Bridges's Petition Without Appointing Counsel Was Harmless

In *Lewis*, *supra*, 11 Cal.5th at page 957, the California Supreme Court, resolving a conflict among the courts of appeal,

held that a petitioner seeking relief under section 1170.95 is "entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' "

Our Supreme Court, however, also held that a superior court's failure to appoint counsel to represent a petitioner when assessing whether he or she has made a prima facie showing of entitlement to relief under section 1170.95, subdivision (c) is state law error only, reviewable for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818.  (*Lewis*, *supra*, 11 Cal.5th at pp. 973–974.)  Under this standard, a petitioner must " 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.'  [Citations.]  More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Id*. at p. 974.)

In this case, because Bridges checked the necessary boxes on his form petition, the superior court erred in denying the petition without first appointing counsel and allowing an opportunity for briefing.  The error was harmless, however, because the record of conviction establishes that Bridges was ineligible for resentencing as a matter of law.  (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864 [error in denying petition at prima facie stage without appointing counsel was

10

harmless where "the record of conviction establishes [petitioner] is ineligible for relief under section 1170.95 as a matter of law"].)

To be eligible for relief under section 1170.95, Bridges was required to show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437. (§ 1170.95, subd. (a)(3).) Bridges could not make such a showing, however, because the record of conviction conclusively demonstrates that he was the actual killer. As set forth in our prior opinion, Bridges told witnesses on the afternoon preceding the shooting that if any Crips were on the street that night, they were "good as dead." Later that night, Bridges and his companions emerged from an alley and fired their weapons at Christy and the other victims, and then, as the wounded Christy lay on the ground pleading for help, Bridges approached him within three to four feet and shot him several more times. In affirming Bridges's conviction for first degree murder, we concluded the evidence was sufficient to support his conviction under either a lying-in-wait theory or a premeditated murder theory. We further explained that this was a case where the evidence of premeditation was "so convincing . . . that the reviewing court can conclude with confidence that the jury must have based its verdict upon that theory." Because Bridges was convicted of premeditated murder as the actual killer of Christy, he was not eligible for relief under section 1170.95. (See *Lewis*, *supra*, 11 Cal.5th at p. 967 [Senate Bill 1437 was enacted " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life' "].)

Moreover, even if Bridges was not the actual killer but rather an aider and abettor, he still would be ineligible for resentencing as a matter of law. "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile, supra,* 10 Cal.5th at p. 848.) "[E]xpress malice requires an intent to kill." (*People v. Delgado* (2017) 2 Cal.5th 544, 571.) Here, by finding the lying-in-wait-special circumstance allegation to be true, the jury necessarily found that Bridges acted with the intent to kill. (See, e.g., *People v. Fayed* (2020) 9 Cal.5th 147, 203 ["To determine whether an aider and abettor who is not the actual killer can be subject to the lying-in-wait special circumstance, 'the questions are whether defendant, with the intent to kill, aided and abetted the victim's killing, and whether the actual killer intentionally killed the victim by means of lying in wait' "]; *People v. Nelson* (2016) 1 Cal.5th 513, 549 [" 'lying-in-wait special circumstance requires intent to kill' "]; *People v. Sandoval* (2015) 62 Cal.4th 394, 416 [lying in wait " 'is the functional equivalent of proof of premeditation, deliberation, and intent to kill' "].)

Accordingly, whether Bridges was the actual killer or aided and abetted the killing with an intent to kill, he could still be convicted of murder notwithstanding Senate Bill 1437's amendments to sections 188 and 189. Because Bridges was ineligible for relief under section 1170.95 as a matter of law, there is no reasonable probability that he would have obtained a more favorable result if counsel had been appointed and given the opportunity for briefing. Under these circumstances, the error in denying the petition without first appointing counsel was harmless.

## DISPOSITION

The order denying Tommy Bridges's Penal Code section 1170.95 petition is affirmed.

NOT TO BE PUBLISHED.


                                        MATTHEWS, J.[*]


We concur:



        LAVIN, Acting P. J.



        EGERTON, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.